IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00364 SOM |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING MOTION TO |
| vs. | ) | DISMISS FOR PROSECUTORIAL |
| | ) | MISCONDUCT |
| RICCIO TANAKA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

ORDER DENYING MOTION TO DISMISS FOR PROSECUTORIAL MISCONDUCT

I.      INTRODUCTION.

Defendant Riccio Tanaka moves to dismiss the Indictment based on alleged prosecutorial misconduct. Alternatively, Tanaka requests other sanctions, but identifies only one such alternative--dismissal of one Government attorney from this case. As clarified during the evidentiary hearing on this matter, Tanaka claims that his Sixth Amendment rights were violated when his attorney was allegedly threatened with having been an accessory to Tanaka's alleged crime.[1] Even assuming Tanaka's Sixth Amendment rights were violated, that pretrial violation does not warrant dismissal of the Indictment, as it can be cured by appointing new defense counsel. Nor is replacement of any Government attorney warranted. Accordingly, the motion to dismiss the Indictment is denied.

---

[1] Tanaka is not basing this motion on a Government attorney's statement that his attorney might have to be a witness in this case.

II.     FINDINGS OF FACT.

Evidence was received during a hearing held on October 7, 2004, at which four witnesses--Michael A. Weight, Riccio Tanaka, Brian D. Bailey, and Clare E. Connors--testified.[2] Based on the testimony and Exhibit 1, which was received in evidence at the hearing, the court finds the following by a preponderance of the evidence.[3]

1.  All of the witnesses testified credibly.

2.  On July 23, 2003, Tanaka was charged in a two-count Indictment. The first count alleged that Tanaka had structured a transaction with a domestic financial institution to evade reporting requirements, in violation of 31 U.S.C. § 5324(a)(3). The second count alleged that, in violation of 31 U.S.C. § 7203, Tanaka had failed to file a federal tax return for the 2002 calendar year on or before April 15, 2003. See Indictment (July 23, 2003).

---

[2] In an effort to rule promptly and to avoid having the court burden the overextended court reporter, this court did not request an expedited certified transcript of the hearing. The court has reviewed only the "rough" unedited transcript, and therefore cannot provide exact page and line citations to testimony.

[3] To the extent any finding of fact should more properly be designated a conclusion of law, it should be treated as a conclusion of law. Similarly, to the extent any conclusion of law should more properly be designated a finding of fact, it should be treated as a finding of fact. For ease of reference to particular findings and conclusions in later proceedings, the findings and conclusions are presented in numbered paragraphs.

3. Tanaka's attorney, Assistant Federal Public Defender Michael A. Weight, provided the Government with a copy of an Internal Revenue Service ("IRS") Form 2688 (Application for Additional Extension of Time to File U.S. Individual Income Tax Return) for 2002, dated April 14, 2003, which Tanaka intended to use at trial to show that Tanaka had applied for an extension to file his 2002 tax return. See Weight Testimony. A Government attorney, Clare E. Connors, testified that Weight had given the Government a copy of the Form 2688 during the week before September 21, 2004. See Connors Testimony. Tanaka's position was that this document had been signed by Tanaka and mailed to the IRS in a timely manner. See Weight Testimony.

4. Another Government attorney, Brian D. Bailey, testified that, in a conversation with Weight about the authenticity of Tanaka's Form 2688, he told Weight that, if the Government could verify that the application for extension of time to file return had indeed been sent to the IRS, the Government would be inclined to dismiss Count 2 of the Indictment. See Bailey Testimony.

5. Bailey and Connors are both with the Tax Division of the Department of Justice. They were assigned to travel from Washington, D.C., to try this case in this district.

6. On September 21, 2004, Weight met with Bailey and Connors, at Weight's office. At this meeting, Connors did not

say anything of substance, leaving it to Bailey, who is senior to her, to speak on behalf of the Government. The meeting pertained only to the case, and there was no social chit-chat before the meeting started. <u>See</u> Weight Testimony; Connors Testimony; Bailey Testimony. This was Bailey's first in-person meeting with Weight, although they had spoken several times by telephone. <u>See</u> Bailey Testimony.

      7.   Bailey and Weight discussed the Government's exhibits at the meeting. Bailey then asked whether Weight had any more details about the Form 2688. During the ensuing discussion, Weight told the Government that, after Tanaka had been indicted, Tanaka had had his accountant prepare his 1040 Income Tax Return for the 2002 calendar year. Weight said that, although prepared, the return was not filed, given Weight's advice. Weight had been concerned that a late filing would be tantamount to an admission that Tanaka had, as alleged in Count 2, failed to file his 2002 return by April 15, 2003. <u>See</u> Weight Testimony. Weight testified that he gave Tanaka this advice during 2003, after he began representing Tanaka in September 2003. <u>See</u> Weight Cross-examination.

      8.   Weight says that, at the meeting, Bailey asked for a copy of the tax return, which Weight declined to provide. <u>See</u> Weight Testimony.

4

9. According to Weight, Bailey next asked him whether he had considered that he could be an accessory to Tanaka's alleged crime. Weight says that he responded something to the effect of "you mean after he was indicted?" Weight says that Bailey asked, "Well, have you considered that you are now a witness in the case?" Weight says that, in making these comments, Bailey did not use a joking tone. In fact, Weight perceived Bailey's comments as a threat. See Weight Testimony.

10. Although Bailey could not recall the exact order in which things were discussed at the September 21 meeting, he did remember the context of what was discussed. His account of the accessory discussion tracked Weight's account in many respects. Thus, Bailey remembered that Weight had said that Tanaka had been advised not to file his tax return. Bailey assumed at that point that it had been Weight who had given Tanaka that advice. Bailey remembered telling Weight that some people might consider advising someone not to file a return to be an offense--specifically, aiding the wilful failure to file a tax return. Bailey says that Weight replied, "After the offense is completed?" or, "After the indictment?"

11. In one respect, Bailey's description of the discussion went beyond Weight's. Bailey says that he thought about Weight's question and responded, "Probably not." See

5

Bailey Testimony. Weight had no recollection of such a response by Bailey. See Weight Testimony.

12. Connors did not remember the exact words used in the exchange, but she did recall that Bailey told Weight that some people might think that Weight's conduct might be aiding and abetting a crime. According to Connors, Weight responded, "After the indictment?" Connors echoed Bailey in saying that Bailey replied, "Probably not." See Connors Testimony.

13. Weight testified that Bailey then mentioned that he was considering going back to the grand jury to supersede the Indictment to expand the scope of it. As the Indictment is written, Tanaka is charged with having failed to file his 2002 tax return by April 15, 2003. Weight testified that Bailey told him that the Government was considering changing the Indictment to allege that Tanaka had entirely failed to file his 2002 tax return. See Weight Testimony. Bailey testified that he called Weight the following day and told Weight that the Government was not going to supersede the Indictment and probably was not going to call Weight as a witness. See Bailey Testimony.

14. Weight says that, at the September 21 meeting, after discussing the possibility that he was an accessory or witness, they talked about jury instructions. See Weight Testimony. The whole meeting on September 21 took about twenty

6

minutes.  See Weight Testimony; Connors Testimony; Bailey Testimony.

15.  According to Weight, the discussion led him to be concerned about being included as a defendant in a superseding indictment.  See Weight Testimony.

16.  On cross-examination of Weight, the Government raised the issue of Weight's misdemeanor conviction for a tax violation, implying that Weight was ultrasensitive to Government statements about prosecution for a tax violation.  See Weight Cross-examination.

17.  Bailey explained that the reason he told Weight that some people might consider advising a client not to file a return to be a crime was that he wanted Weight to be aware of the potential problem in the future, not because he was trying to threaten Weight in this case.  See Bailey Testimony.  Considering Bailey's demeanor as a witness, the court finds Bailey credible. Bailey did not intend to threaten Weight when Bailey discussed aiding and abetting, although the court has no doubt that Weight perceived the comment as such a threat.  Moreover, the court finds that the comment was not made to try to place Weight in a position of conflict of interest, as there is no evidence in the record indicating that Bailey knew that Weight might be predisposed to perceiving the comment as a threat given Weight's earlier conviction.  To the contrary, no evidence indicates that

Bailey and Connors were aware of Weight's prior conviction at the time of the September 21 meeting.

18. Tanaka testified that, after Weight told Tanaka about what had occurred at the September 21 meeting, Tanaka decided to ask for new counsel. See Tanaka Testimony.

III.   CONCLUSIONS OF LAW.

1. The power of a court to dismiss an indictment because of prosecutorial misconduct "is frequently discussed but rarely invoked." United States v. De Rosa, 783 F.2d 1401, 1403 (9th Cir. 1986) (quoting United States v. Samango, 607 F.2d 877, 881 (9th Cir. 1979)). It is a "drastic step," and therefore a "disfavored remedy." United States v. Rogers, 751 F.2d 1074, 1076 (9th Cir. 1985). An indictment may be dismissed to protect a defendant's constitutional due process rights or pursuant to the court's inherent supervisory powers. De Rosa, 783 F.2d at 1404

2. When examining whether an indictment should be dismissed based on constitutional error, courts focus on "protecting the integrity of the judicial process and preserving fairness for the individual defendant." United States v. Larrazolo, 869 F.2d 1354, 1357 (9th Cir. 1989).

3. Tanaka says that Bailey's conduct violated his Sixth Amendment right to the assistance of counsel in his defense. The Supreme Court has characterized this right as being

"fundamental to our system of justice," as it "assure[s] fairness in the adversary criminal process." United States v. Morrison, 449 U.S. 361, 364 (1981).

4.  When the Government commits a Sixth Amendment violation, courts apply the "general rule that remedies should be tailored to the injury suffered from the constitutional violation." Morrison, 449 U.S. at at 361. Courts should "identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." Id. at 365.

5.  "[A]bsent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." Morrison, 449 U.S. at 365. "The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression." Id.

6.  For example, in O'Brien v. United States, 386 U.S. 345 (1967), after the defendant was indicted, but before his trial, the Government recorded a conversation between the defendant and his attorney. Although the attorneys prosecuting the case were apparently unaware of the recorded conversation during the trial that led to the defendant's conviction, when the Government indicated to the Supreme Court that it had recorded the conversation, the Court vacated the judgment of conviction

and remanded the matter for a new trial. Id. The Court has subsequently cited O'Brien for the proposition that a remedy for a Sixth Amendment violation should be tailored to cure the injury suffered. See Morrison, 449 U.S. at 364-65.

   7. Citing Morrison, the Ninth Circuit remanded a criminal case to the district court for an evidentiary hearing on whether the Government had disparaged a defendant's attorney, and, if so, whether the disparagement had caused the defendant to replace trial counsel. The Ninth Circuit held that, if both questions were answered affirmatively, the district court should vacate the defendant's conviction and conduct a new trial. See United States v. Amlani, 111 F.3d 705, 719-20 (9th Cir. 1997). On appeal, the defendant, Amlani, had complained that he had been deprived of his right to counsel when the prosecuting attorney had repeatedly disparaged his attorney in front of him, allegedly telling Amlani that his counsel did not care about him, that the attorney was not competent, and that the attorney could not prevent a conviction. Id. at 710. Amlani claimed that he had been prejudiced by losing confidence in his chosen counsel and switching to a different, less competent attorney for trial. Id.

   8. The Ninth Circuit noted that disparagement is "inappropriate." Id. at 711. It then stated that "'the essential aim of the [Sixth] Amendment is to guarantee an

effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.'" Id. (quoting Wheat v. United States, 486 U.S. 153, 159 (1988)).

9. The Ninth Circuit said that a showing that Amlani's replacement counsel was inadequate was not necessary to establish the prejudice required to vacate Amlani's conviction. Amlani, 111 F.3d at 711. Instead, the Ninth Circuit noted, such prejudice arose when the Government "destroy[ed] the defendant's confidence in his attorney." Id. Accordingly, "a change in defense counsel caused by the prosecution's misconduct itself establishes the requisite prejudice to vacate . . . [a] conviction." Id.

10. While concluding that Amlani had alleged a Sixth Amendment violation, the Ninth Circuit remanded the case so that the Government could seek to rebut Amlani's allegations in an evidentiary hearing. Id. The Ninth Circuit concluded that a retrial, not dismissal, was the appropriate remedy if Amlani could prove on remand that a Sixth Amendment violation had occurred. Id.

11. Under Amlani, even assuming Tanaka's Sixth Amendment rights were violated, dismissal of the Indictment is not appropriate. In Amlani, after the defendant was convicted, the Ninth Circuit determined that the proper remedy for a Sixth

11

Amendment violation would be a retrial, rather than dismissal of the indictment. <u>Amlani</u> governs here. The proper remedy for any Sixth Amendment violation that Tanaka suffered would be to conduct the trial free from the taint of the Sixth Amendment violation, as was ordered with respect to the retrial in <u>Amlani</u>, rather than dismissal of the Indictment.

12. Short of dismissing an indictment, this court may impose numerous penalties for violations of a defendant's constitutional rights. In addition to ordering a trial free from the constitutional violation, the court may remove and quarantine a prosecutor, suppress tainted evidence, order the offending prosecutor to pay a fine or attend ethics classes, or issue a public reprimand. <u>See</u> <u>United States v. Horn</u>, 29 F.3d 754, 766-67 (1st Cir. 1994). The important thing in deciding on a remedy is to tailor the relief in an appropriate manner to assure the defendant effective assistance of counsel and a fair trial. <u>See</u> <u>Morrison</u>, 449 U.S. at 365.

13. Here, the appropriate remedy is not a dismissal of the Indictment. A trial in which Tanaka has a new court-appointed attorney who is given sufficient time to prepare for the trial is appropriate. Because the court does not find that Bailey acted in bad faith or that he actually attempted to threaten Weight, other sanctions, including the removal of Bailey from this case, are unwarranted.

14.  Citing <u>Amlani</u>, 111 F.3d at 711, Tanaka argues that the Government should not have the power to veto a defendant's choice of counsel.  That, however, did not happen here.

IV.  CONCLUSION.

Based on the foregoing, the court denies the motion to dismiss indictment.

As requested by Tanaka, Weight is allowed to withdraw from being Tanaka's counsel.  Tanaka shall immediately contact Magistrate Judge Kevin S.C. Chang to have a new attorney appointed.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 18, 2004.

/s/ Susan Oki Mollway
SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE